NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

MIGUEL D., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.D., *Appellees*.

No. 1 CA-JV 17-0055
FILED 8-8-2017

---

Appeal from the Superior Court in Maricopa County
No. JD30631
The Honorable Cari A. Harrison, Judge

**AFFIRMED**

---

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Dawn R. Williams
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Lawrence F. Winthrop joined.

---

J O N E S, Judge:

¶1        Miguel D. (Father) appeals the juvenile court's order terminating his parental rights to M.D. (Child).  Father argues the Department of Child Safety (DCS) failed to prove by clear and convincing evidence the statutory ground for severance.  For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

¶2        In June 2015, DCS received a police report advising Father and Child's mother (Mother) were arrested for and ultimately charged with domestic violence assault.  Child, then four-years-old, was present during the incident that resulted in the assault charges.  After responding to the incident, a police officer escorted Child to his bedroom to find his shoes and, in the process, noticed "at least 2 glass pipes commonly used for smoking marijuana."  There was also a lidless, near-empty bottle of vodka on a table in the room and "several empty beer cans" in the corner of the room.  Police contacted DCS, which assumed temporary physical custody of Child.

¶3        DCS subsequently filed a petition alleging Child was dependent as to Father on the grounds of abuse and neglect.[2]  Child was initially placed with a DCS-licensed foster home in Phoenix but subsequently relocated to Tucson to reside with Father's uncle in

---

[1]      "We view the facts in the light most favorable to upholding the juvenile court's order terminating parental rights."  *Marianne N. v. DCS*, 240 Ariz. 470, 471 n.1, ¶ 1 (App. 2016) (citing *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010)).

[2]      DCS also alleged the Child was dependent as to Mother.  The Child was found dependent as to Mother, and her parental rights were eventually terminated in January 2017.  She did not appeal the termination of her parental rights and is not a party to this appeal.

September 2015. Father, who lived in Tucson, was granted supervised visitation at least once per week for two hours. As part of a preliminary protective order, Father agreed to participate in parenting classes, domestic violence counseling, substance abuse assessment and treatment, random urinalysis testing (UAs), and parent aide services. However, after a September 2015 evidentiary hearing, the juvenile court adjudicated Child dependent as to Father and approved a case plan of family reunification.

¶4            At the time of his intake into substance abuse treatment in July 2015 with La Frontera, Father had a pending DUI related to alcohol. Moreover, Father previously had his parental rights to his eldest son terminated based upon substance abuse. In September 2015, Father told La Frontera about his drinking a "six-pack, two to three times per week" and smoking marijuana. By October 2015, however, Father had completed twelve sessions each of counseling for substance abuse relapse prevention, healthy relationships, and parenting skills.

¶5            Despite Father's participation in treatment, he continued to drink alcohol and, in addition, use cocaine. Father's UA testing period with the Treatment Assessment Screening Center (TASC) began in June 2015 and ended in June 2016. Father failed to test more than ten times during this period, and, when Father did submit UAs, he tested positive for alcohol four times and positive for cocaine four times. In January 2016, Father sought additional substance abuse services at La Frontera, but by March 2016, Father stopped attending those group sessions altogether. Two months later, Father was arrested for criminal nuisance. Father admitted he had been drinking at the time but was just "having a conversation with someone" where both were being "obnoxious." Additionally, in a May 2016 appointment concerning Father's prescribed medication, he complained about persisting anxiety and mood swings, which he attributed to his continuing use of cocaine.

¶6            In June 2016, the juvenile court ordered the case plan be changed to severance and adoption. Thereafter, Father enrolled in a twenty-one-week intensive outpatient program (IOP) for substance abuse relapse prevention. Although Father ultimately completed the IOP, he tested positive for cocaine in July 2016 and had two unexcused absences during the program. Moreover, even though Father signed a lease on his own apartment on August 1, he continued to stay with his dad, despite admitting he had concerns with his dad's use of alcohol. Father insisted his dad's use of alcohol had no effect on him because he was "strong enough" to resist temptation, but Father also advised he would not leave Child alone with his dad if his dad was intoxicated.

¶7          In July 2016, DCS moved to terminate Father's parental rights, alleging: (1) Father was unable to discharge parental responsibilities because of a history of chronic substance and/or alcohol abuse, and (2) Father had been unable or unwilling to remedy the circumstances causing Child to be in an out-of-home placement for the statutory period of time. *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(3), (8).[3]  Father objected to the severance, and a two-day severance hearing was held in January 2017.

¶8          As of the severance hearing, Father had "not made [the DCS case manager] aware of any [plans]" to continue treatment in the future. Indeed, the case manager testified "Father has had over a year, approximately 18 months, to establish a sober, stable, safe life-style [and] [h]e's not done so."  Moreover, despite complaints of persisting anxiety, restlessness, and mood swings throughout the dependency, Father did not fully accept his having mental health issues.  Father did concede he had not begun taking his medication obtained through substance abuse treatment as prescribed until December 2016, after "us[ing] it under [his] discretion" since approximately February 2016.  Consequently, the case manager expressed concern Father was "self-medicating, not medicating."

¶9          Furthermore, Father's continued association with individuals misusing substances, such as Mother and his dad, was a concern.  The case manager "was not even sure where [Father] was staying . . . between his home and his father's home," a situation the case manager believed would be "very unstable" for Child.  Finally, the case manager expressed concern regarding Father's aggression and "the uncertainty of whether or not his mental health issues [were], in fact, treated and managed appropriately."

¶10          After taking the matter under advisement, the juvenile court found DCS proved by clear and convincing evidence termination of Father's parental rights was warranted based upon, among other grounds, Father's prolonged drug abuse.  The court also found severance was in Child's best interests and entered an order terminating Father's parental rights.  Father timely appealed.  We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

---

3          Absent material changes from the relevant date, we cite a statute's current version.

**DISCUSSION**

**¶11**        To terminate a parent's rights, the juvenile court must find clear and convincing evidence to support at least one statutory ground for severance.  A.R.S. § 8-533(B); Ariz. R.P. Juv. Ct. 66(C); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).[4]  We "will affirm the juvenile court's termination order 'absent an abuse of discretion or unless the court's findings of fact were clearly erroneous.'"  *E.R. v. DCS*, 237 Ariz. 56, 58, ¶ 9 (App. 2015) (quoting *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004)).  A finding is clearly erroneous if no reasonable evidence supports that finding.  *Mary Lou C.*, 207 Ariz. at 47, ¶ 8 (quoting *Maricopa Cty. Juv. Action No. JV-132905*, 186 Ariz. 607, 609 (App. 1996)).  This Court will not reweigh the evidence, however, because the juvenile court, as a direct observer of the parties' credibility, is "in the best position to weigh the evidence."  *Id.* (citations omitted).

**¶12**        A parent's rights may be terminated when "the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period."  A.R.S. § 8-533(B)(3).  Father does not dispute that he has struggled with chronic substance abuse but argues the juvenile court abused its discretion in finding his substance abuse would continue for a prolonged, indeterminate period.  Specifically, Father contends the court's finding is inconsistent with the evidence that: (1) he did not submit any positive drug screens for six months leading up to the severance hearing; and (2) he graduated from the IOP within a month prior to the severance hearing.

**¶13**        In determining whether a parent would be able to overcome his drug abuse, the juvenile court must consider:

> the treatment history of the parent to gauge the likelihood the parent will be in a position to parent the child in the foreseeable future.  Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support

---

[4]        The juvenile court must also find by a preponderance of the evidence severance is in the child's best interests.  A.R.S. § 8-533(B); Ariz. R.P. Juv. Ct. 66(C); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005).  Father does not argue insufficient evidence supported the court's finding as to Child's best interests and, therefore, we need not address it on appeal.

system to maintain sobriety, there is little hope of success in parenting.

*Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 378, ¶ 25 (App. 2010) (citing *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998)). Moreover, "drug abuse need not be constant to be considered chronic." *Id.* at 377, ¶ 16. A parent's "temporary abstinence from drugs and alcohol does not outweigh [a] significant history of abuse or [a] consistent inability to abstain during th[e] [dependency and termination proceedings]." *Id.* at 379, ¶ 29. When determining whether to terminate parental rights because of a parent's chronic substance abuse, "a child's interest in permanency must prevail over a parent's uncertain battle with drugs." *Jennifer S. v. DCS*, 240 Ariz. 282, 287, ¶ 17 (App. 2016) (citing *N.F.*, 579 N.W.2d at 341).

**¶14** Although commendable, Father's recent efforts do not overcome his history of substance abuse. The record reflects Father started using drugs and/or drinking alcohol more than twenty years ago. Throughout the eighteen-month dependency, Father consistently failed to abstain from drugs and alcohol as he frequently missed tests and tested positive for substances on multiple occasions, most recently for cocaine in July 2016. And because Father's UAs through the IOP were unmonitored and no separate drug testing evidence was introduced for the period after July 2016, it is unclear whether Father truly stopped using drugs and drinking alcohol. Indeed, the juvenile court found Father "ha[d] a history of not being honest about his use of alcohol and drugs as evidenced by his DUI while in treatment and his failure to report his historical use of cocaine," suggesting it was hesitant to accept Father's self-report of sobriety.

**¶15** Moreover, by waiting until the "eleventh hour" to complete the IOP, Father failed to establish his ability to maintain sobriety outside of the program for *any* period of time. Father also consistently failed to follow instructions related to his use of prescription medication and continued to use alcohol even after being charged in three separate incidents — for DUI, domestic violence assault, and criminal nuisance — all of which occurred while he was using alcohol. Indeed, Father's use of drugs and alcohol persisted even after his parental rights to an older child were terminated based upon his unremitting substance abuse.

**¶16** We cannot say the juvenile court's finding that Father's substance abuse was chronic and likely to continue for a prolonged, indeterminate period is inconsistent with the extensive evidence of Father's recent and historical drug and alcohol abuse. *See, e.g., Maricopa Cty. Juv.*

*Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994) (concluding parent's eventual efforts toward a successful recovery from substance abuse, beginning eight months prior to the severance hearing, were "too little, too late"). The court's findings are supported by the record, and we find no abuse of discretion.[5]

**CONCLUSION**

**¶17**        The juvenile court's order terminating Father's parental rights to Child is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[5]        Because we conclude clear and convincing evidence supports termination of Father's parental rights on the ground of chronic substance abuse, we need not address whether severance was warranted based upon any other grounds. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) (citing *Michael J.*, 196 Ariz. at 251, ¶ 27, and *Maricopa Cty. Juv. Action No. JS-6520*, 157 Ariz. 238, 242 (App. 1988)).